UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:13-cv-21297-KMM-Moore/Torres

BUCCELLATI HOLDING ITALIA SPA
and **BUCCELLATI, INC.**,

        Plaintiffs,

v.

**LAURA BUCCELLATI, LLC, LAURA
BUCCELLATI**, and **LILIAN AZEL**,

        Defendants.
_____/

**LAURA BUCCELLATI, LLC, LAURA
BUCCELLATI,**

        Counter-Plaintiffs.

v.

**BUCCELLATI HOLDING ITALIA SPA**,
**BUCCELLATI, INC.**, **GIANMARIA
BUCCELLATI, BUCCELLATI WATCHES SA**,
and **PAOLO CARRION**,

        Counter-Defendants
_____/

**BUCCELLATI'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM OR,
<u>ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT</u>**

This case was filed to protect Plaintiffs' brand and prevent consumer confusion. Defendants' use of the Buccellati name in their LAURA BUCCELLATI mark is likely to confuse consumers into believing that Defendants are somehow affiliated with, or sponsored or endorsed by, Plaintiffs, the famous jewelry company that owns the exclusive rights to the use of the mark BUCCELLATI in the United States.

Buccellati is not trying to prevent Defendant Laura Buccellati from the mere use of her personal name. Buccellati is not motivated by greed or vengeance, and is not interested in "intimidating" Ms. Buccellati (as Counterclaimants would have this Court believe). Rather, Buccellati is, and always has been[1], motivated by an honest, good faith desire to protect and maintain the integrity and goodwill of its brand, which it has taken great pains to establish as a trusted provider of luxury goods in the U.S.

---

[1] As Counterclaimants note, this case is not the first action in the legal dispute between the parties. Counterclaimants are hardly the helpless victims of a Buccellati-initiated campaign of intimidation, however. To set the record straight, it was ***Defendant LBL that struck first***, by filing an Opposition proceeding against Buccellati before the Trademark Trial & Appeal Board ("TTAB") in early 2010, after LBL's federal trademark application was refused by the Trademark Office in light of an earlier-filed BUCCELLATI application. (*See* Opp. No. 91193294, filed January 6, 2010). And, contrary to Counterclaimants' repeated assertions in this case that the Opposition was "not going well" for Buccellati, it was LBL that withdrew its allegations of fraud, and the TTAB partially granted a motion by Buccellati to dismiss LBL's claims. Indeed, the Opposition is currently suspended, ***at the request of LBL***.

As a direct result of the '294 Opposition, Buccellati was alerted to the fact that Defendants had commenced use of their "LAURA BUCCELLATI" mark. Buccellati sued Defendants in the U.S. District Court for the Southern District of New York, to address the violations of Buccellati's rights in its three incontestable federal BUCCELLATI registrations. (Case No. 11-Civ-7268, filed Oct. 14, 2011). Buccellati alleged personal jurisdiction based on Defendants' promotional meetings in Manhattan, as well as the sale of a handbag by Defendants to Buccellati's investigator in New York, which Buccellati believed demonstrated that Defendants were willing and able to do business there. Recognizing a split in the personal jurisdiction cases as to the import of a single sale to a mark owner's investigator, however, Judge Gardephe ultimately dismissed for lack of personal jurisdiction. But he did not make any finding of wrongdoing by Buccellati, and there was no decision on the merits in the New York litigation. Buccellati re-filed the instant case in Florida, because Defendants are based here.

Over the past several years, Ms. Buccellati—an extended family member with no current stake in the Plaintiffs—has taken every possible opportunity to play on Buccellati's heritage by publicly dropping the names of her famous ancestors in the same breath as her new handbag company name. As evidenced by her coy use of the tag line "a jewel of a bag" to describe her wares, Ms. Buccellati is, clearly, trying to foster a connection between her new company and Buccellati, in order to mislead consumers into believing they can rely on Buccellati's reputation for quality when purchasing her goods. But the law does not allow her to trade on Plaintiffs' name without authorization, even if her "trademark" is a formative of her own name. And whether or not Buccellati has in the past sold, or will in the future sell, leather handbags is largely irrelevant to this case, because Buccellati's Italian jewelry and Counterclaimants' high-priced Italian handbags are all luxury goods, part of the same broader fashion industry. As such, consumers expect that goods offered under the same name emanate from the same source, or are at least authorized by or licensed from the mark owner.

In an effort to distract the Court from the key issues in this case, Counterclaimants filed a long and confusing Counterclaim, seeking all kinds of extraneous declarations regarding Ms. Buccellati's use of LAURA BUCCELLATI as a trademark for leather handbags and belts, and making all kinds of unfounded accusations against Buccellati and its executives. In response to Buccellati's Motion to Dismiss that pleading, Counterclaimants have now filed a lengthy "Response" document, attempting to clarify their claims and lobbing still more forceful accusations against Buccellati. But Counterclaimants' overlong response brief[2] cannot disguise the fact that the Counterclaim fails to state any viable claim for relief.

---

[2] Counterclaimants' Response is exactly twenty pages. It includes, however, no less than four pages worth of single-spaced footnotes in a tiny (9- or 10-point) font. Counterclaimants' brief therefore appears to violate Local Rules 5.1(a)(4) and 7.1(c)(2).

**I.     THE COUNTERCLAIM IS AN INDEFINITE SHOTGUN PLEADING.**

Counterclaimants deny that they have filed an improper "shotgun pleading," pointing to, and going to great lengths to describe, their "separate subject headings for each group of allegations" as proof that the Counterclaim is "clear and well-organized." (Resp., pp. 3-4). But while it is true that Counterclaimants used "separate subject headings" in the "Underlying Facts" section of their pleading, the use of headings to break up nearly twelve pages of irrelevant background material hardly rendered that pleading "simple" or "clear." The problem is that headings or not, none of the background facts is tied to a specific cause of action. Compounding the problem is that headings were not used where they really were needed, namely in the two "Counts" of the Counterclaim, which together request at least seven separate declarations.

Counterclaimants have not identified a single case or other authority to support the idea that the way they pleaded the Counterclaim is acceptable —*i.e.*, lumping seven different requests for relief into two counts, without citing the distinct legal bases for each respective claim, and generally averring the whole thing against all five (served and unserved, corporate and individual, American and European) Counter-defendants. The Counterclaim leaves ambiguous precisely what they are claiming, against whom they are asserting claims, and what the specific legal bases for those claims are. Buccellati cannot be expected to respond to such a pleading, and therefore, the Counterclaims should be dismissed.

**II.    COUNT I OF THE COUNTERCLAIM SHOULD BE DISMISSED.**

    **A.    Counterclaimants' Request for a Declaration that LAURA BUCCELLATI
        is Non-Infringing on Leather Handbags and Belts is Redundant.**

Request for relief "A" is redundant, despite Counterclaimants' attempts to distract from this fact in the Response by combining requests for relief "A" and "B" under one heading, and re-characterizing the request. Request for relief "A" asked only for a declaration of non-

infringement with regard to the use of a specific mark ("Laura Buccellati") on specific goods ("leather handbags… and leather belts").  So Counterclaimants' Response should be disregarded to the extent they now try to cast their claim as one for a declaration that addresses "the specific parameters of what is considered permissible non-infringing use" and provides "specific guidance as to what types of goods [Defendant Laura Buccellati] is entitled to sell using the name Laura Buccellati or Buccellati."  Not only does the law not provide for such a theoretical declaration,[3] it's not even what Counterclaimants asked for in their Counterclaim.

B. **Priority is Not at Issue; Counterclaimants' Application and Use Dates Occurred After the Issue Dates of the Asserted BUCCELLATI Registrations.**

Request for relief "B" is moot.  Counterclaimants cite cases indicating that some federal courts have issued declarations relating to priority of rights, but that does not change the fact that priority is not at issue *here*.  There is no question but that Counterclaimants are junior users.  LBL's application and dates of use of LAURA BUCCELLATI occurred *after* Buccellati's

---

[3] The Response fails to distinguish—or even mention—the cases from this Circuit that Buccellati cited in support of dismissal of claim "A."  Instead, Counterclaimants rely on a number of cases from other Circuits that are factually distinguishable.  Most present questions of the *validity* of the plaintiffs' various asserted IP—*e.g., Dominion* (asking court to declare trademark invalid and challenges scope of trademark rights); *Who Dat* (same); *Castaline* (counterclaims challenging validity); *Altvater* (invalidity of patents); *Innovation Ventures* (counterclaims challenging validity of trade dress)—even though here, request "A" asks only for a finding of non-infringement, and the three asserted trademarks are incontestable, so validity is not an issue that could be adjudicated.  Other cases are procedurally inapposite, analyze different legal theories, or deal with different forms of intellectual property subject to different statutory schemes.  See *Ogosport* (holding that counterclaims were not redundant of affirmative defenses); *Innovation Ventures* (dismissing counterclaims that were untimely filed); *Baroness Small Estates* (holding counterclaims presented an actual case or controversy); and *Righthaven* (copyright defendants' counterclaim request for declaration on "inline linking" was not redundant because such a finding would not necessarily be encompassed in a general judgment in defendants' favor).

One case cited by Counterclaimants is instructive, however.  In *Stickrath v. Globalstar, Inc.*, a counterclaim that did not "identify any uncertainty or controversy apart from those raised in the Complaint or affirmative defenses" was dismissed.  2008 WL 2050990, *7 (N.D. Cal. 2008).  The court found that the counterclaim was "entirely superfluous."  *Id*.

registration of BUCCELLATI for a variety of goods; even Buccellati's newer BUCCELLATI application was filed before LBL's application or use of its own claimed mark. The Board has already dismissed LBL's priority claims and the Court should similarly disregard them.

Without citing any case law, Counterclaimants claim there is "obviously an actual case or controversy" because Buccellati has "obtained registrations and filed applications for registration" in order to "block" others from using its mark.  But that is the whole point of trademark registration—the registration serves as evidence of the trademark owner's exclusive rights and blocks later registration of confusingly similar marks by others.  Thus even accepting Counterclaimants' allegations as true, there is nothing improper about Buccellati's registration strategy.  Counterclaimants will not suffer "irreparable harm" merely because—as *junior* users—they may be barred from registration of a confusingly similar mark.

      C.     **The Registrability of LAURA BUCCELLATI is Not Ripe.**

Request for relief "C" seeks a general declaration that Counterclaimants are "entitled to registration of the mark Laura Buccellati in connection with leather handbags… and leather belts."  But now, in a footnote in their Response, Counterclaimants concede that Buccellati's Motion to Dismiss was "correct that, as a technical matter, the Court does not have authority to direct the issuance of the registration until after publication." (Resp., p. 12, n. 9) Furthermore, the 1960's Second and Fourth Circuit cases cited by Counterclaimants in connection with request for relief "C" actually support Buccellati's argument that the request is not yet ripe.  As Counterclaimants note in their brief, in the *Avon Shoe* case, the defendant's HAYMAKER mark had already made it through the prosecution process, been published for opposition, and formally opposed by the Plaintiff.  So the Court in *Avon Shoe* was just taking over adjudication of a live dispute that was already before the Board.  Similarly, in the *Durox* case cited by Counterclaimants, there was a "pending trademark office proceeding." Here, there is no pending

Trademark Office proceeding regarding the LAURA BUCCELLATI & Design mark – the mark is suspended and there is currently no activity on the application. The registrability of that application is not ripe and is therefore not a question that is properly before this Court.

### D.      There is no Nexus Between the Registered Marks and the '355 Application.

Request for relief "D" seeks a declaration partially denying registration of Buccellati's pending '355 Application. In order for that request to properly be adjudicated here, however, Counterclaimants needed to plead a sufficient nexus between the issues raised by the Complaint (which does not even mention the '355 Application) and Buccellati's subjective intent in filing the '355 Application. They have not done so.

In their Response to the Motion to Dismiss, Counterclaimants seem[4] to argue that there is a nexus between Buccellati's infringement claims and the registrability of the pending '355 Application because both the lawsuit and the filing of the application are part of Buccellati's "concerted plan to block any use of the name Buccellati by anyone in any way." (Resp., p. 15). But the fact that Buccellati's infringement claims and its decision to file new applications may both be characterized as part of the same corporate strategy to broadly protect the BUCCELLATI brand does not in any way show that there is a nexus between enforcement of Buccellati's three incontestable registrations and its intent in filing a new, unrelated application.

---

[4] Counterclaimants discuss the so-called "interconnectedness" of Buccellati with the unserved European counter-defendants. But those parties are not in the case and the Motion was not filed on their behalves, so the relationship between them and Buccellati is irrelevant to the Motion. Further, Counterclaimants' threat of sanctions against Buccellati for refusing to accept service on behalf of these counter-defendants should be disregarded. Buccellati has consented to the jurisdiction of this Court by filing suit here, but the European parties have not so consented and in fact it is questionable whether there is personal jurisdiction over them. Regardless of the corporate relationship, Buccellati has no obligation to give Counterclaimants a free pass by forcing its affiliate or executives to waive the jurisdictional and service requirements of the Federal Rules—non-US parties can properly refuse to waive service and require service under the Hague Convention, as is their right. Rule 4, Adv. Comm. Notes to 1993 Amend., Subd. (d) (explaining there are no "adverse consequences to a foreign defendant" who refuses to waive service; receipt of a waiver request "does not give rise to any obligation to answer the lawsuit").

Counterclaimants try to analogize the present case to two 1960's cases—*Avon Shoe* and *Durox*—which they argue involve "facts similar to the present case." The only thing about *Avon Shoe* that is similar to this case, however, is the fact that it was an infringement case. Unlike here, where Buccellati has 50 years of prior use and Counterclaimants indisputably knew of that use, in *Avon Shoe*, the defendant adopted and used its junior HAYMAKER mark for sportswear "without knowledge of the plaintiffs' prior use" of HAYMAKERS on shoes for a mere three years. *Avon Shoe Co. v. David Crystal, Inc*. 279 F.2d 607, 610-11 (2d. Cir. 1960). Furthermore, the *Avon Shoe* parties peacefully coexisted for eight years prior to the filing of the suit, and both parties' rights were limited by an unrelated party's prior registration of HAYMAKER for gloves.

Nor does the Fourth Circuit's 1963 opinion in *Durox Co. v. Duron Paint Mfg. Co.,* 320 F.2d 882, present "similar facts" to this case. In *Durox*, the same federal trademark registration for DURON was at the center of a Board opposition, subsequent trademark infringement claims and a request for declaratory relief. Here, in contrast, Buccellati's incontestable BUCCELLATI registrations form the basis for the Complaint but are not at issue in the pending Board proceeding related to the '355 Application, and have no bearing on Counterclaimants' request for a declaration on the '355 Application.

### III.  COUNT II OF THE COUNTERCLAIM SHOULD BE DISMISSED.[5]

#### A.  The Two Documents Relied on by Counterclaimants in Their Response Brief Do Not Save Their Deficient Fraud Allegations.

Buccellati's Motion to Dismiss noted that Counterclaimants' fraud allegations fail for two reasons: first, there is no nexus between the allegations of fraud at issue in the pending '355 Application and Buccellati's trademark claims in this dispute; and second, Counterclaimants

---

[5] Because BW is not properly in the case, Buccellati will not address the portion of the Response devoted to standing to seek cancellation of the MARIO BUCCELLATI registration. Buccellati reiterates that by filing its Motion to Dismiss, Buccellati did/does not purport to speak for BW, and did/does not waive any arguments BW may have in response to the Counterclaim.

have failed to comply with the heightened pleading standard of Rule 9(b).  In their response, Counterclaimants completely ignore the first point, and that is reason alone to dismiss their fraud claims.  But on the second point, which they did try to address, they fare no better; the two documents attached to the Counterclaim that they rely on do not save their fraud allegations.

To properly allege a fraud claim, Counterclaimants needed to do more than just make a conclusory assertion that Gianmaria Buccellati's June 2008 declaration was false—they needed to allege specific facts from which the Court could reasonably infer that by submitting Mr. Buccellati's declaration to the USPTO, Buccellati acted willfully, in bad faith and with a specific intent to deceive the USPTO, ***at the time the allegedly fraudulent statement was made***.  Thus the declaration of former executive Mario Buccellati II, who left the company prior to the filing of the '355 Application, is completely irrelevant to Mr. Buccellati's declaration confirming Buccellati's use of its mark in 2008.  Similarly, private 2010 correspondence between Gianmaria Buccellati and his niece is also irrelevant as evidence of a fraudulent statement made in 2008.  In any event, the correspondence at issue merely evinces Mr. Buccellati's rejection of Laura Buccellati's business proposal and includes his personal opinions; it in no way shows or even suggests an intent by Buccellati the company to deceive the USPTO, which is not even mentioned in the letter.

The cases relied on by Counterclaimants are all inapposite.  Some are distinguishable because, unlike here, the relevant pleadings ***did*** include sufficient facts to support the allegations that fraudulent statements were made with intent to deceive.  *See, e.g., Sanders,* 418 Fed. Appx. 914, 919 (pleadings alleged that patentee not only failed to disclose, but actually took steps to hide from the Patent Office, that its supposedly "impartial" expert declarant had a business relationship with the patentee); *In re Yoon* 2011 WL 1258179, *2-3 (complaint alleged that

defendant concealed specific properties he owned and falsely omitted transfer of real property on a bankruptcy questionnaire). Others are procedurally irrelevant. *See U.S. v. Hall*, 2011 WL 6291957, *6-7 (analyzing sufficiency of criminal indictment; no discussion of Rule 9(b)); *Enterprise Rent-A-Car* (analyzing motion to strike). Still other fraud cases cited by Counterclaimants actually support **Buccellati's** position. *See Correct Craft* (dismissing counterclaims for failure to allege specific facts on inequitable conduct in patent prosecution).

The case *Wyethe Holdings Corp. v. Sandoz, Inc.* is particularly instructive, where the court held that the factual allegations provided "a clear nexus between the alleged misrepresentations, the circumstances in which they were made, and the resulting impact on the Examiner's decision." *2012 WL 600715,* *10 (D. Del. Feb. 3, 2012) (complaint alleged, with a high degree of technical detail, that patentee engaged in inequitable conduct by affirmatively misrepresenting the teachings of the prior art and omitting key information regarding experimental error rate and discrepancies in its own data). Here, to contrast, Counterclaimants provide one letter from a non-native English speaker, in which Gianmaria Buccellati rejected Laura Buccellati's business offer in 2010. Counterclaimants allege no facts to show a nexus between this personal letter, which was written over three years after the '355 Application was filed, and Buccellati's allegedly fraudulent statement to the USPTO in June 2008.

**B.    Counterclaimants Have Not Met the Standard for Pleading a "Concurrent Use" Registration—Nor Could They.**

It is clear from their response brief that Counterclaimants do not understand "concurrent use" registrations. In the words of the leading trademark commentator, "Concurrent use proceedings in the PTO are for territorial cases and are not proper for parties using a similar mark in the same territory but on different goods…A concurrent use proceeding is not an alternative type of registration for every applicant who argues a distinction between its mark and

that of a cited registration or application." J. Thomas McCarthy, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION, § 20:87 (2013 online ed.). Furthermore, concurrent use registrations are only issued by the Trademark Office when (a) there is no likelihood of confusion and (b) the concurrent use applicant's lawful use in commerce predates the prior registrant's earliest filing date. 15 U.S.C. § 2(d). Leaving aside the likelihood of confusion issue, here Counterclaimants have claimed a first use date in 2008, but the earliest filing dates of the asserted Buccellati registrations occurred in 1966, so a concurrent use registration would never be proper.

Counterclaimants rely on an old case from the Court of Customs and Patent Appeals—*Alfred Dunhill of London, Inc. v. Dunhill Tailored Clothes, Inc.*, 293 F.2d 685 (CCPA 1961)—for the idea that LBL should be allowed to obtain a concurrent use registration for "noncompeting goods." But Counterclaimants' reliance on *Alfred Dunhill* is misplaced, as that case does not, as Counterclaimants contend, stand for the general principle that federal courts can order concurrent use registrations limiting a junior user's registration to certain goods. Rather, in *Alfred Dunhill*, the CCPA approved a concurrent use registration with special "mode of use" restrictions (the junior user was limited to use of its mark in a certain style and format and required to always use the descriptive term "tailors"), only because of an equitable estoppel based on the senior user's failure to object for more than 25 years. *Id*. at 690-91. Clearly, the undisputed facts of the instant case are not at all similar, and *Alfred Dunhill* is inapposite.

## **CONCLUSION**

For the forgoing reasons, Buccellati respectfully renews its request that this Court grant its Motion to Dismiss, and for such other and further relief as this Court deems just and proper. In the alternative, this Court should enter an order requiring Counterclaimants to file a more definite statement pursuant to Rule 12(e).

|  |  |
|---|---|
| DATED:  September 6, 2013 | Respectfully submitted,<br><br>**FRIEDLAND VINING, P.A.**<br><br>/s/Jaime Rich Vining<br>By:  David K. Friedland<br>Florida Bar No. 833479<br>Email:  dkf@friedlandvining.com<br>Jaime Rich Vining<br>Florida Bar No. 030932<br>Email:  jrv@friedlandvining.com<br>1500 San Remo Ave., Suite 200<br>Coral Gables, FL 33146<br>(305) 777-1720 – telephone<br>(305) 456-4922 – facsimile<br><br>*-and-*<br><br>**EDWARDS WILDMAN PALMER, LLP**<br><br>Perla M. Kuhn (admitted *pro hac vice*)<br>Rory J. Radding (admitted *pro hac vice*)<br>H. Straat Tenney (admitted *pro hac vice*)<br>750 Lexington Avenue<br>New York, NY 10022<br>(212) 308-4411 – telephone<br>(212) 308-4844 – facsimile<br><br>Jami A. Gekas (admitted *pro hac vice*)<br>225 W. Wacker Drive<br>Chicago, IL 60606<br>(312) 201-2000 – telephone<br>(312) 201-2200 – facsimile<br><br>*Counsel for Plaintiffs and Counterclaim Defendants Buccellati Holding Italia SpA and Buccellati, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on the above referenced date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the Manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Albert Bordas, Esq.
**ALBERT BORDAS, P.A.**
Email: albert@bordasiplaw.com
5975 Sunset Dr., Suite 607
Miami, FL 33143
(305) 669-9848 – telephone
(305) 669-9851 – facsimile
*Service via ECF*

Leonardo G. Renaud, Esq.
**LEONARDO G. RENAUD, P.A.**
Email: leonardorenaud@aol.com
8105 NW 155th St.
Miami Lakes, FL 33016
(305) 818-9993 – telephone
(305) 818-9997 – facsimile
*Service via ECF*

David T. Azrin, Esq.
**GALLET DREYER & BERKEY, LLP**
Email: dta@gdblaw.com
845 Third Avenue, 8th Floor
New York, NY 10022-6601
(212) 935-3131
Fax: (212) 935-4514
*Service via ECF*

                                                                           s/Jaime Rich Vining
                                                                             Jaime Rich Vining