## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:13-cv-21297-KMM-Moore/Torres

**BUCCELLATI HOLDING ITALIA SPA**
and **BUCCELLATI, INC.,**

                    Plaintiffs,

v.

**LAURA BUCCELLATI, LLC, LAURA
BUCCELLATI**, and **LILIAN AZEL**,

                    Defendants.

_____/

**LAURA BUCCELLATI, LLC, LAURA
BUCCELLATI,**

                    Counter-Plaintiffs.

v.

**BUCCELLATI HOLDING ITALIA SPA**,
**BUCCELLATI, INC.**, **GIANMARIA
BUCCELLATI, BUCCELLATI WATCHES SA**,
and **PAOLO CARRION**,

                    Counter-Defendants

_____/

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

       Plaintiffs Buccellati Holding Italia SPA and Buccellati, Inc. (together, "**Plaintiffs**" or

"**Buccellati**") respectfully submit this Memorandum in Opposition to the Motion to Compel by

Defendants Laura Buccellati, LLC ("**LBL**"), Laura Buccellati, and Lilian Azel (together,

"**Defendants**") (Doc. No. 54).  In support thereof, Plaintiffs state as follows:

**Introduction**

Consistent with their custom throughout this litigation, Defendants have filed yet another motion in a misguided attempt to distract Buccellati and the Court from the merits of this case. Defendants' Motion to Compel is predicated on two "meet-and-confer" demand letters Defendants sent prior to the parties agreed-upon date for exchanging documents; as well as a subsequent "meet-and-confer" telephone call, which followed the parties' mutual production of documents, but in which Defendants' counsel nonetheless confirmed he had not bothered to review Buccellati's production. *See* Exhibit 1, Declaration of Van Der Laan ("**DVDL Decl.**"), ¶¶ 2-3. Despite its belief that the "meet-and-confer" call was premature (how could the parties reasonably confer about the sufficiency of Buccellati's production when Defendants' counsel had not even reviewed it yet?), Buccellati participated in that call in good faith, made reasonable efforts to accommodate Defendants where possible, and asked Defendants to provide explanations of relevance for certain discovery requests that seemed overbroad or unfair.  Rather than respond directly to Plaintiffs' reasonable request, Defendants filed the instant motion on November 12, 2013.

A review of Defendants' Motion to Compel leads to the conclusion that Defendants are more interested in manufacturing disputes to bring before this Court than they are in actually obtaining relevant discovery.  Defendants a) insist they have the right to propound discovery that is completely unlimited in time or scope, b) seek further responses to Interrogatories that have already been completely answered, c) demand production of ancient documents and extraterritorial documents that have no possible relevance to this case, and d) argue that Buccellati is somehow obligated to produce documents that are not even in its possession.

This Court has broad discretion in considering whether to grant or deny Defendants' Motion to Compel.  *Comm. Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). In addition, this Court is "empowered to limit discovery, especially if the 'burden or expense of the proposed discovery outweighs its likely benefit'."  *Structural Specialties, Inc. v. Employers Mut. Cas. Co*, No. 7:06-cv-58 (HL), 2007 WL 1100480, *1 (M.D. Ga. April 11, 2007), quoting FED. R. CIV. P. 26(b)(2)(C).  Buccellati respectfully requests that the Court exercise its discretion to deny Defendants' Motion in its entirety.

<u>**Argument**</u>

**I.   Buccellati Has Reasonably and Fairly Responded to Defendants' Overly Broad Discovery Requests By Producing Responsive Information.**

Defendants' First Set of Document Requests served on August 30, 2013 contained 71 separate, extremely broad document requests,[1] only three of which had any kind of temporal limitation.   Defendants' Interrogatories were not much better: the questions posed in Interrogatories numbered 1-7 and 15-16 were limited to "the past ten years," but none of the remaining Interrogatories had any temporal limitation, either.[2]

Courts routinely find that discovery requests which are not limited by time are overbroad, and either limit them or deny them outright.  *See, e.g., Pepperwood of Naples Condominium Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, Case No. 2:10-cv-753-FtM-36SPC, 2011 WL 4382104, *15 (M.D. Fla. Sep. 20, 2011) (interrogatory without time limitations was overbroad;

---

[1] For example, Defendants seek, without any limitations as to time, scope or geography, "Specimens of each label, sign, display, trade dress, wrapper packaging, promotion, advertisement, point-of-sale material and any marketing material Plaintiffs have used," "All documents that relate or refer to the marketing of, or plans to market, goods the Plaintiffs' Products," and "Documents that reveal Plaintiffs' annual marketing expenses or planned expenses in connection with the Plaintiffs' Products."

[2] Buccellati notes that, with subparts, Defendants' Interrogatories far exceeded the maximum number allowed under the Federal Rules.  For example, Defendants' Interrogatories numbered 1-3 each arguably contained eight discrete questions, for a total of twenty-four separate Interrogatories in Defendants' Nos. "1," "2," and "3" alone.

ordering non-movant to provide a limited response, covering only three years); *Reist v. Source Interlink Companies, Inc.*, No. 2:10-cv-269-FtM-36SPC, 2010 WL 4940096, *3 (M.D. Fla. Nov. 29, 2010) (temporal objections had merit, and document request was "overbroad as it has no limitations to time or to subject matter"); *Rich v. City of Jacksonville*, No. 3:09-cv-454-J-32MCR, 2010 WL 4094972, *2 (M.D. Fla. Oct. 18, 2010) (sustaining objections to request seeking "any correspondence referring to any Defendant" without limitations in time and scope); *Structural Specialties,* 2007 WL 1100480 at *1-2 (ordering temporal and geographic limitations on interrogatories).

The lack of temporal limitation is especially unreasonable here, where Plaintiff BHI's predecessor company was formed nearly 100 years ago.  Obviously, given its lengthy history, Buccellati could not be expected to produce decades of documents in response to Defendants' extremely broad requests; nor would such an exercise be much help to Defendants, who would then be buried in a mountain of irrelevant paper.  As such, in response to Defendants' overbroad requests, Buccellati set a reasonable limit on its responses, generally agreeing to search for and produce responsive documents and information from January 1, 2008 to the present. (DVDL Decl., ¶ 4.)

In addition, Buccellati took important steps to ensure that Defendants do have the responsive documents within the scope of discovery to which they are entitled.  First, notwithstanding its objections, in response to many Requests, Buccellati did produce responsive documents dating prior to 2008.  For example, Buccellati has produced, *inter alia*: promotional "Look Books" for Plaintiffs' products dating from the mid-90's; Buccellati's U.S. expansion business plan from April 1996; press coverage of the client and its principals dating back more than a decade; trademark search report documents from 2005; corporate consolidation

documents from 2006; and 2007 agreements with Plaintiffs' former executive (and the brother of Defendant Laura Buccellati), Mario Buccellati.   In addition, for many of Defendants' Interrogatories seeking information from "the past ten years," Buccellati responded by agreeing to that time period.  And, most importantly, Buccellati's counsel has indicated multiple times that Buccellati is open and willing to discuss production of additional pre-2008 documents and information, if Defendants will only identify the categories of documents they are seeking with any level of specificity, and explain why they fall within the scope of discovery.  (DVDL Decl., ¶ 4.)  Defendants have yet to avail themselves of that offer, and have suggested no alternative time limitation that they believe would be acceptable.

In their Motion to Compel, Defendants ask that this Court generally "overrule" Buccellati's objection to the lack of temporal limitations in Defendants' discovery requests.  But Defendants do not identify a single Interrogatory or Document Request where they feel Buccellati's objection has resulted in the withholding of relevant and responsive information. Having raised no specific issues with the scope of Buccellati's production, Defendants' request that the Court "overrule" Buccellati's objection seems to indicate a focus on form over function.

In sum, Buccellati responded to Defendants' discovery requests by producing responsive documents from a reasonable time frame.   And, Buccellati is open to searching for and producing additional documents if Defendants can identify what they are looking for. Buccellati's objection to the lack of temporal limitations in Defendants' discovery requests was properly made, and Defendants have not identified any category of relevant and responsive documents or information that is being withheld on the basis of Buccellati's objection.

**II.     Buccellati Fairly Answered Interrogatories 1 and 2, and Supplemented Its Response Pursuant to Rule 33(d).**

Contrary to Defendants' representation, Plaintiffs provided complete answers to Interrogatories Nos. 1 and 2.   Buccellati answered the primary question asked; in each case, Buccellati's answer was "yes."  Then (and to the extent that Buccellati understood these rather confusingly-worded Interrogatories), pursuant to Rule 33(d), Buccellati also agreed to (and did) produce documents from which additional details responsive to the (many) subparts of these Interrogatories could be determined.[3]   And, subsequent to its document production, Buccellati's witnesses Andrea Buccellati and Alberto Milani were deposed, and provided still more information responsive to these Interrogatories.

Defendants have the information they sought in Interrogatories 1 and 2.  Their Motion to Compel should be denied to the extent it seeks further responses.

**III.    Document Request Nos. 47-50 and 52 Are Overly Broad and Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence.**

Although the scope of discovery under the Federal Rules is broad, "discovery, like all matters of procedure, has ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  The standard of relevance in discovery does not "allow a

---

[3] In the nearly-identical Interrogatories, Defendants' primary question asks whether Plaintiffs sold certain products bearing the BUCCELLATI mark in the U.S. within the past ten years.  Because Buccellati gave a "yes" answer, these Interrogatories then instructed Buccellati to provide responses to seven more discrete subparts, namely: (1) a general description of "the nature and extent of such sales": (2) the "approximate date when [Buccellati] first began selling such products"; (3) the "type of products" sold each year; (4) the "model names" sold each year; (5) the "approximate annual dollar volume of the sales of each such product or model each  year"; (6)  the "identity of any monthly, quarterly or annual sales reports concerning such sales"; and (7) the identity of each "management level person" making decisions concerning the sale and advertising of such products. Courts in the Eleventh Circuit apply the "related question" test to determine whether subparts are discreet.  *Perez v. Aircom Management Corp. Inc.*, 2012 WL 6811079 (S.D. Fla. Sep. 24, 2012).  The key question is "whether the particular subparts are logically or factually subsumed within and necessarily related to the primary question."  *Id.*  Here, none of the discrete subparts is logically or factually subsumed within the primary question.  For example, the date of first use may fall outside the ten-year time frame imposed by the primary question.  As another example, the identity of people making management-level decisions regarding sales and advertising is not subsumed within the question of whether any sales took place.

party to roam in the shadow zones of relevancy and to explore a matter which does not presently appear germane on the theory that it might conceivably become so." *Pepperwood*, 2011 WL 4382104 at *1 (internal quotations omitted).  In particular, it is "proper to deny" discovery that is outdated.  *Oppenheimer*, 437 U.S. 340 (noting it is proper to deny discovery related only to "events that occurred before an applicable limitations period").   Here, Defendants requested production of documents related to an entity that has not borne the referenced name in over 40 years, as well as documents related to two trademark applications which were abandoned more than 25 years ago.   Any such documents are too old to have any bearing on this case. Defendants also requested that Buccellati produce "corporate organizational documents" originating with one entity that does no business in the United States and another that has no connection with Buccellati.  All of these Requests are unreasonable and Defendants' Motion to Compel further production in response to them should be denied.

For example, Document Requests 47-48 and 52 broadly seek "all documents that mention, refer or relate to" any business entities "containing" the names "Mario Buccellati," "Gianmaria Buccellati" and "Federico Buccellati," respectively.  The Requests are not limited in scope, time or geography.  In response to Buccellati's objections to these overly broad requests, Defendants subsequently purported to "narrow" each request, but Defendants still seek five broad categories of "corporate organizational documents" not limited in time or geography, including all: (1) articles or certificates of organization and amendments thereto; (2) shareholders or operating agreements and amendments thereto; (3) shareholder or member or director meeting minutes; (4) corporate resolutions; and (5) shareholder or member stock or membership ledgers. As narrowed, these Requests are still unreasonably overbroad and not reasonably calculated to lead to the discovery of admissible evidence.   Buccellati formerly did business under the

- 7 -

company name "Mario Buccellati" in the U.S., but it ceased using that name in 1972, *over 35 years prior to the formation of LBL and the facts giving rise to the present dispute*.   Thus digging up documents responsive to Request 47 (as narrowed) would still be unduly burdensome, if not impossible, and Defendants have not provided a single credible reason why these documents are necessary.  Nor have Defendants given any credible reason why "corporate organizational documents" for the entities operating "Gianmaria Buccellati" stores *outside the U.S.* are relevant to a U.S. trademark dispute focused on whether U.S. consumers are likely to be confused.   As for Request 52, which seeks "corporate organizational documents" for "a business entity containing the name 'Federico Buccellati'," Buccellati cannot be compelled to produce responsive documents for the simple reason that it has none—the Rome-based business operating under that name is not connected to Plaintiffs.

Document Requests Nos. 49 and 50 are also unreasonable and not calculated to lead to the discovery of admissible evidence.  Through these requests, Defendants seek production of documents related to two 1985 applications to register the mark FEDERICO BUCCELLATI.  Both applications were filed by "Diffusione B S.R.L.," an Italian corporation, and were based on foreign registrations, rather than use in U.S. commerce.  These applications were later abandoned in 1987, following Diffusione B S.R.L.'s default in opposition proceedings instituted by one of Plaintiffs' predecessor companies.  (DVDL Decl., ¶¶ 8-9.)  Defendants have not provided any credible explanation for why "ancient" (25+ year-old documents) documents related to unsuccessful third party trademark applications—based on foreign registrations and for a mark not directly at issue—are germane to this case, especially considering that the applications were abandoned more than 20 years before Defendants began using the LAURA BUCCELLATI mark.

At issue in this case is whether Defendants' use of the LAURA BUCCELLATI mark is likely to cause consumer confusion.  Defendants cannot reasonably assert that documents related to (1) an entity name last used in 1970; (2) trademark applications abandoned in 1987; and (3) foreign entities which do not do business in the United States have any bearing on whether consumers in this country are confused by Defendants' use of the LAURA BUCCELLATI mark.

## IV.   There is No Reason Why Buccellati Should Be Compelled to Download & Produce Volumes of Irrelevant, Publicly-Available Documents from the USPTO Website

In Request No. 51, Defendants ask for "all documents concerning the application for registration of the mark MARIO BUCCELLATI, serial number 77281371."  And Defendants really do mean "*all*" – they apparently seek not only to have Buccellati produce responsive, non-public documents (which Buccellati has agreed to do), but also to have Buccellati go through the process of downloading, processing and producing each and every document from the lengthy U.S. Patent & Trademark Office ("**USPTO**") "file wrapper" on Plaintiffs' App. Ser. No. 77281371 ("**the '371 Application**").  Defendants' position with respect to Request No. 51 is unreasonable, and their Motion to Compel further production in response to that request should therefore be denied.

The '371 application—which was filed on an "intent-to-use" basis by Buccellati, Inc. on September 17, 2007, and abandoned in mid-2012—covered use of the mark MARIO BUCCELLATI on a variety of cutlery, silverware and decorative objects.  (DVDL Decl., ¶ 5-6.) Notably, the mark referenced in the application does not form the basis for Buccellati's infringement claims in this case; nor is the '371 Application implicated by Defendants' Counterclaims.  The file wrapper for the '371 Application, which spans nearly five years and includes dozens of entries, is mostly made up of Buccellati, Inc.'s routine requests for extension of time to file a "Statement of Use," and the USPTO's form approvals of such requests.  (*Id*., ¶

6).   The original application was filed online using the USPTO's website, and all of the documents in the file wrapper can be accessed by the public from the site available at URL http://www.uspto.gov.

Documents related to an abandoned application (on a different mark than the one infringed) are not relevant to this proceeding, and Defendants have given no reasonable explanation as to why they need such documents.[4]   Nonetheless, in an effort to avoid an unnecessary and expensive discovery dispute, Buccellati *agreed to produce any non-privileged documents in its possession responsive to Defendants' Request No. 51*.   In other words, although in their Motion, Defendants speculate that "Plaintiffs may have documents that make reference to these proceedings which are not part of the public filings" (MTC, p. 17), Buccellati has already agreed to produce any such documents.

During the parties' meet-and-confer call, Buccellati's counsel confirmed that Buccellati itself does not maintain copies of the publicly-available documents from the '371 Application's file wrapper; the only place where copies of those documents are kept is in the attorney files of Buccellati's outside counsel, the contents of which are attorney work product and which also contain attorney-client communications.   (DVDL Decl., ¶ 7).   Thus, the only way that Buccellati can comply with Defendants' demands for production of "all" documents related to the '371 Application is for an agent of Buccellati to visit the USPTO website, download each and every public document from the file wrapper, and then have Buccellati's legal team Bates-label and

---

[4] In their Motion to Compel, Defendants claim that documents related to the abandoned '371 Application "relate directly to the issues of this case, namely the use of the name Buccellati, even when combined with a family member's first name."  (MTC, pp. 16-17).  This explanation makes no sense.  Even if "the use of the name Buccellati…when combined with a family member's first name" *is* relevant, the '371 Application was abandoned precisely because the mark was never "used" in commerce in connection with the applied-for goods, so it is not evidence of "the *use* of the name Buccellati."  (DVDL Decl., ¶¶ 5-6, Exs. B-C thereto).  Furthermore, the face of the application makes clear that the "name shown in the mark does not identify a particular living individual" (*id*., ¶ 5, Ex. B thereto), so neither is the '371 Application evidence of use of a mark incorporating "a family member's first name."

- 10 -

produce same.  But this is inefficient and unreasonable.  Both parties have equal access to the public filings regarding the '371 Application.  If Defendants truly believe that some document from the USPTO file wrapper is relevant, then they have the option to review the public filings online, and print the documents (if any) they wish to use in the case.

<u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Compel, and grant such other and further relief as this Court deems just and proper.

DATED:  December 6, 2013

Respectfully submitted,

/s/Jaime Rich Vining
**FRIEDLAND VINING, P.A.**
By:  David K. Friedland
Florida Bar No. 833479
Email:  dkf@friedlandvining.com
Jaime Rich Vining
Florida Bar No. 030932
Email:  jrv@friedlandvining.com
1500 San Remo Ave., Suite 200
Coral Gables, FL 33146
(305) 777-1720 – telephone
(305) 456-4922 – facsimile

**EDWARDS WILDMAN PALMER, LLP**
Perla M. Kuhn (admitted *pro hac vice*)
Rory J. Radding (admitted *pro hac vice*)
H. Straat Tenney (admitted *pro hac vice*)
750 Lexington Avenue
New York, NY 10022
(212) 308-4411 – telephone
(212) 308-4844 – facsimile

Jami A. Gekas (admitted *pro hac vice*)
225 W. Wacker Drive
Chicago, IL 60606
(312) 201-2170 – telephone
(312) 201-2000 – facsimile

***Counsel for Plaintiffs Buccellati Holding Italia SPA and Buccellati, Inc.***

AM 25881579.2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a copy of the foregoing Response was served via the CM/ECF electronic filing system on this 6th day of December, 2013, upon:

Albert Bordas, Esq.
**ALBERT BORDAS, P.A.**
Email: albert@bordasiplaw.com
5975 Sunset Dr., Suite 607
Miami, FL 33143
(305) 669-9848 – telephone
(305) 669-9851 – facsimile

Leonardo G. Renaud, Esq.
**LEONARDO G. RENAUD, P.A.**
Email: leonardorenaud@aol.com
8105 NW 155th St.
Miami Lakes, FL 33016
(305) 818-9993 – telephone
(305) 818-9997 – facsimile

David T. Azrin, Esq.
**GALLET DREYER & BERKEY, LLP**
Email: dta@gdblaw.com
845 Third Avenue, 8th Floor
New York, NY 10022-6601
(212) 935-3131
Fax: (212) 935-4514

/s/Jaime Rich Vining
Jaime Rich Vining

AM 25881579.2