UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:13-cv-21297-KMM-Moore/Torres

**BUCCELLATI HOLDING ITALIA SPA**
and **BUCCELLATI, INC.**,

           Plaintiffs,

v.

**LAURA BUCCELLATI, LLC, LAURA BUCCELLATI**, and **LILIAN AZEL**,

           Defendants.
_____/

**LAURA BUCCELLATI, LLC, LAURA BUCCELLATI,**

           Counter-Plaintiffs.

v.

**BUCCELLATI HOLDING ITALIA SPA**,
**BUCCELLATI, INC.**, **GIANMARIA BUCCELLATI, BUCCELLATI WATCHES SA**,
and **PAOLO CARRION**,

           Counter-Defendants
_____/

**BUCCELLATI'S RESPONSE IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO QUASH SUBPOENA TO BANKUNITED, INC.**

Pursuant to Federal Rule of Civil Procedure 26(b), Plaintiffs Buccellati Holding Italia, SpA and Buccellati, Inc. (together, "**Buccellati**") hereby oppose the Emergency Motion to Quash or Modify a Subpoena and for a Protective Order filed by Laura Buccellati, LLC, Laura Buccellati, and Lilian Azel ("**Defendants**") (Docket No. 75) and further request that the Court lift the stay on enforcing the subpoena that was entered by Magistrate Judge Edwin G Torres

1

(Docket No. 76), as soon as possible.

**I.      BACKGROUND**

In July, 2013, in their Rule 26(a)(1) Disclosures, Defendants identified Pedro Gonzalez of BankUnited, Inc. ("**BankUnited**") as having relevant and discoverable information that the Defendants may use to support their "claims or defenses" in this case. (*See* Declaration of Jami A. Gekas in Opposition to Motion to Quash BankUnited Subpoena ("**Gekas Decl.**"), ¶ 5). In particular, Defendants stated that BankUnited had "general information and knowledge related to Laura Buccellati, LLC bank records" (*id.*):

> In accordance with Fed. R. Civ. P. 26(a)(1), Defendants, Laura Buccellati, LLC; Laura Buccellati; and Lilian Azel, hereby make the following disclosures:
>
> (A)    The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information— that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment:
>
> \*      \*      \*
>
> 17.    Pedro Gonzalez, Bank United, 2200 Weston Road, Weston, FL 33326 - General information and knowledge related to Laura Buccellati, LLC bank records.

As part of ongoing discovery, and because BankUnited had been **identified by Defendants** as having discoverable information, Buccellati issued a *subpoena duces tecum* to BankUnited on December 11, 2013 (*see* Declaration of Jami A. Gekas in Opposition to Motion to Quash BankUnited Subpoena, ¶ 3). Due to the vague nature of Defendants' "General information and knowledge" disclosure noted above, Buccellati had no choice but to request

broad categories of documents from BankUnited, in order to ensure that all relevant material was produced. (The subpoena and rider were filed by Defendants, see Docket No. 75-1). Nonetheless, recognizing that responsive documents might include sensitive financial information, Buccellati provided a letter to BankUnited explaining the subpoena, and including a copy of the Agreed Protective Order in this case, which allows third parties such as BankUnited to designate documents as confidential (*id*., ¶ 4).

Notwithstanding the existence of the Protective Order, or the fact that Defendants themselves had identified BankUnited as having relevant information, Defendants complained to Buccellati's counsel that the subpoena directed to BankUnited was "overbroad to the extent that it requests the personal bank records of Lilly [Lilian Azel] and Laura [Laura Buccellati]" and accordingly asked that Buccellati withdraw the initial subpoena and tender a new one limited to Laura Buccellati, LLC (*id*., ¶ 6).

Although Buccellati does not have an obligation to justify the subpoena, Buccellati's counsel nonetheless responded immediately in an attempt to resolve the dispute. Buccellati's counsel explained that Buccellati had provided BankUnited with a copy of the Protective Order, for purposes of designating any confidential documents, and suggested that Defendants could communicate directly with BankUnited to determine whether any documents it might produce should be designated pursuant to the Protective Order. But instead of addressing Buccellati's message and continuing to meet and confer, Defendants filed their Emergency Motion to Quash or Modify a Subpoena and for a Protective Order, and Request for Stay of Subpoena Pending Resolution of the Motion (Docket No. 75) on December 16, 2013.

BankUnited has indicated to Buccellati that the bank is ready and willing to comply with the subpoena. After reviewing Defendants' Motion to Quash, however, the Court stayed

enforcement of the subpoena pending final adjudication of the motion (Docket No. 76).  Thus to date, no responsive documents have been produced from BankUnited, even though discovery in this matter closes in eleven days and summary judgment motions are due in exactly three weeks.

In their motion, Defendants explain that "Defendant Laura Buccellati does not have any personal accounts with or obligations to BankUnited, Inc." (*Id*., n. 1).  Accordingly, the Motion focuses only on Defendant Lilian Azel and her accounts with the bank. Defendants do not, however, identify with any specificity how many BankUnited accounts Ms. Azel has access to, or how many accounts might contain information responsive to the subpoena. The Motion is very confusing in that Defendants conflate Ms. Azel's "personal" financial information with that related to her "real estate and consulting business, Azel & Associates," and they refer to accounts Ms. Azel "holds" while separately claiming such accounts are "owned" by Ms. Azel and her husband or Azel & Associates. (Docket No. 75, p. 6).  Buccellati's attempts to obtain clarity from Defense counsel regarding the accounts containing responsive information have not been fruitful. (Gekas Decl., ¶ 9). BankUnited itself has indicated that Ms. Azel is an authorized signatory on eight separate accounts with the bank, although BankUnited is not able to provide further details about those accounts while the Court's stay order is in effect.  (*Id*., ¶ 10).

## II.   LEGAL STANDARD

The purpose of discovery under the Federal Rules of Civil Procedure is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a complete and accurate understanding of the true facts. *See United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958).  Rule 26(b) discovery is broad, and allows parties to obtain discovery regarding any non-privileged matter that is relevant to the claims involved in a pending action. *See Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947); *Farnsworth v. Procter and Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Relevance, under

Rule 26, is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). The breadth of discovery is not confined to the issues raised by the pleadings, because discovery is designed to help define and clarify the issues subject to litigation. *Id.* Information can be relevant, and therefore discoverable, whether or not it will be admissible at trial, as long as the information is reasonably calculated to lead to the discovery of admissible evidence. *Dunbar v. United States*, 502 F.2d 506 (5th Cir. 1974).

Federal Rule of Civil Procedure 45(b) authorizes a court to quash a subpoena in limited circumstances only. Moreover, in seeking to quash a subpoena, ***the burden is on the moving party***. See *In re Application of Mesa Power Grp., LLC*, 878 F.Supp.2d 1296, 1306 (S.D. Fla. 2012); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); 9 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE ¶¶ 45.50[2], 45.52[1] (3d ed. 2013). The party trying to prevent discovery must show the necessity for protecting the documents, including "a particular and specific demonstration of fact as distinguished from stereotypes and conclusory statements." *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978). Mere broad allegations of harm that are not supported by specific examples or "articulated reasoning" do not satisfy the Rule 26 burden. *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008). Finally, modification of a subpoena is preferred to granting an outright motion to quash. *See Wiwa*, 392 F.3d at 818; 9 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 45.50[5] (3d ed. 2013).

III.   **ARGUMENT**

   A.   **It is Indisputable That BankUnited Has Relevant, Discoverable Information.**

Having themselves first identified BankUnited as a source of discoverable information, Defendants cannot now "unring" that bell and claim that BankUnited's records should be kept

5

off limits to Buccellati. Defendants criticize Buccellati for issuing an "extensive" and "eminently broad" subpoena at an "early stage" of the case. (Docket No. 75, p. 2-3). But discovery closes in just eleven days, and at present, Buccellati has no way of knowing how many BankUnited accounts may contain discoverable information, who owns or has access to those accounts, the number of records in BankUnited's possession relating to those accounts, when the accounts were opened and/or closed, or any other details at all about those accounts. Thus Buccellati's two-page subpoena Rider—which identified only eight categories of documents to be produced—can hardly be fairly characterized as "extensive" or "improper."

Defendants argue that Ms. Azel's "personal financial information has absolutely no bearing on the trademark infringement claim and unfair competition claims at issue here." (Docket No. 75). But while it may very well be true that some of the BankUnited accounts Ms. Azel has access to (again, it is unclear how many relevant accounts there are and whether Ms. Azel is an "owner" of each such account or merely an authorized signatory) are not *formally* related to the business she co-owns with Ms. Buccellati, she is nevertheless a named defendant in this action as well as an equal decision-maker and Managing Member of what is only a two-person operation, run out of Ms. Buccellati's home. Thus the lines between "personal" and "business" are blurred in this case, and so it is entirely possible—indeed, it is likely—that one of Ms. Azel's supposedly "personal" BankUnited accounts contains relevant information falling within the scope of permissible discovery.

In fact, the record thus far indicates that Ms. Azel's "personal" business is intertwined with the business of Laura Buccellati, LLC. Ms. Azel has already testified that she has personally made loans to the company and "gotten some advances" on her personal credit card for the benefit of Laura Buccellati, LLC. (*See* Exhibit D to Gekas Decl., Deposition Transcript

6

of Lilian Azel, pp. 29-30). Ms. Azel uses the same mobile phone for both her "personal" and "business" matters, and also uses the same personal laptop for the business of Laura Buccellati, LLC, the business of Azel & Associates LLC, and for her own personal matters. (*see id*., Ex. D thereto at pp. 43-44). Ms. Azel considers her work at Laura Buccellati, LLC to be "full time," and it is her only source of income, as she is not paid for her work at Azel & Associates, which takes up only "a couple of hours a month." (see Docket No. 75-7, p. 24:4-12 and 27:3-8). Nonetheless, Laura Buccellati, LLC has never been profitable and Ms. Azel has only received payroll by the company a single time, in 2012, begging the question of whether Ms. Azel has received some other type of non-payroll compensation for her many years of full-time work for the company. (Gekas Decl., Ex. D thereto at pp. 303-07).[1] Furthermore, despite Ms. Azel's claim now that her work for "Azel & Associates" is "entirely separate from" her work for Laura Buccellati, LLC, she testified at her deposition in this case that "Azel & Associates LLC" was an initial investor in Laura Buccellati, LLC, at one point owning 20 percent of the stock of that company (*see id*., Ex. D thereto at pp. 225-26), and Azel & Associates also made a loan to the company (*id.* at p. 300:7-18).

For all of these reasons, Ms. Azel's "personal" bank account records may reflect any number of financial transactions that are relevant to this case, or that are likely to lead to the discovery of relevant and admissible evidence, and not just information related to collecting on a potential judgment.[2] For instance, BankUnited's records may reveal payments intended for

---

[1] Buccellati notes that Pages 298-309 of Ms. Azel's deposition transcript were not designated as "Confidential." However, the underlying documents discussed were designated as "Confidential" under the parties' Agreed Protective Order. Therefore, out of an abundance of caution, Buccellati has redacted all specific dollar amounts and detailed financial information from the relevant pages.

[2] Defendants assert, repeatedly, that Buccellati's only goal in issuing the subpoena to BankUnited was to obtain information necessary to collect on a potential judgment. But that is absolutely

Laura Buccellati, LLC or related to the handbag business that were for one reason or another deposited into one or more of Ms. Azel's so-called "personal" accounts. They may reflect loans by Ms. Azel or her second business, Azel & Associates, to the company. The account records may reflect the date of sales of goods bearing the infringing mark, the type of consumers purchasing goods bearing the infringing mark, the location at which sales of goods bearing the infringing mark occurred or payments made to and/or the identity of consultants, designers, brokers or others involved with the design, marketing or sale of infringing goods. Facts that could be discovered in Ms. Azel's account information may also prove relevant with respect to one or more of Defendants' Amended Affirmative Defenses (*See* Docket No. 69).

Given the broad scope of discovery under the Federal Rules, and the possibility that the records associated with one or more of the many BankUnited accounts that Ms. Azel has access to could contain information "that bears on, or that reasonably could lead to another matter that could bear on, any issue that is or may be in the case," whether it is an element in Buccellati's claims or relevant to Defendants' Affirmative Defense, it is simply impermissible to quash the subpoena to BankUnited.

Rather than allowing Buccellati to examine the various documents associated with Ms. Azel's numerous BankUnited accounts subject to the Protective Order, Defendants have instead —thus far successfully—sought to delay discovery from BankUnited, mere weeks before discovery closes. Because Defendants' Motion fails to demonstrate that Ms. Azel's financial records at BankUnited are not relevant to this action (especially in light of the breadth of Rule 26 discovery), and because Defendants' allegations are devoid of argument and supported by

---

incorrect. Defendants' assertion that Buccellati's counsel indicated as much is—at best—a misunderstanding. Prior to the filing of Defendants' Motion to Quash, Buccellati's counsel had no discussions regarding collection on a possible judgment with defense counsel, and never stated to defense counsel that such was the purpose of the subpoena. (Gekas Decl., ¶ 8).

nothing other than reference to self-serving declarations, the Court should deny Defendants' Motion and allow BankUnited to comply with Buccellati's *subpoena duces tecum*.

### B. Ms. Azel's Privacy Rights Are Not In Danger, Nor Is Any Privilege At Issue

Defendants repeatedly reference the harm to Ms. Azel's "personal privacy rights" if information related to her BankUnited accounts were to be disclosed pursuant to Buccellati's subpoena. Notably, Defendants suggest that such disclosure "would be wholly improper and would grossly violate the personal privacy rights of Lily Azel, her husband, and her family." (Docket No. 75, p. 7). Which privacy rights Defendants fear would be compromised by the disclosure of a named defendant's financial documents, during the course of Rule 26(b) discovery, and subject to a Protective Order, goes unmentioned by Defendants. This omission is particularly glaring in light of the Federal Rules' presumption in favor of disclosure. In addition, Defendants' claims that Ms. Azel's personally and family privacy would be compromised by disclosure of bank records pursuant to a protective order is surprising, given that Ms. Azel has already openly testified regarding such matters as the value of her real property and her husband's annual salary, and then filed a deposition transcript revealing that information on the Court's public electronic filing system (*see, e.g.*, Docket No. 75-7 at pp. 21, 28, etc.).

While Rule 45(d)(3)(A)(iii)-(iv) provides that a subpoena may be quashed where it requires the disclosure of privileged or other protected matter, or subjects a person to undue burden, Defendants have failed to identify any privilege or protection that would preclude discovery of Ms. Azel's financial records in the circumstances here; nor have Defendants alleged any facts or made any argument that demonstrate that such disclosure would create an undue burden on Ms. Azel. Moreover, there exists a general presumption in favor of openness in judicial proceedings, a presumption that is typically not overcome because of the existence of some nebulous economic harm or mere embarrassment. *See AF Holdings, LLC v. Does 1–162*,

9

No. 11-23036-Civ., 2012 WL 488217, at *3 (S.D. Fla. Feb. 14, 2012). To the extent that Ms. Azel's privacy interests might be compromised by the disclosure of relevant information, the proper first step is to identify which privacy rights are at issue. Defendants failed to do even this. Even if Ms. Azel, at this late hour, were able to demonstrate that she had any privacy rights at risk, the proper remedy is to disclose those documents pursuant to the Protective Order, as Buccellati suggested to both BankUnited and the Defendants. Accordingly, the Court should deny Defendants' Motion, and permit the disclosure of documents pursuant to Buccellati's subpoena, subject to the Protective Order if necessary.

### C. No Additional Protective Order is Warranted.

Defendants also move for the entry of an additional protective order, this one aimed at precluding Buccellati from inquiry into Defendants' "personal financial information until such time as" Buccellati prevails. (Docket No. 75, p. 8). Yet Defendants make this request without reference to any controlling authority and without invoking the standards courts apply in determining whether entry of a protective order is permissible. Defendants' omission is hardly surprising, given the nature of the standard to be applied.

While the Defendants repeatedly suggest that Ms. Azel's privacy would be compromised from the disclosure to Buccellati of the financial records held by BankUnited, and that such records are not relevant, Defendants have simply failed to demonstrate any fact that would support their claims. Rather, their labeling of the information as non-relevant and highly private is nothing more than a series of conclusory statements devoid of argument. *See Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008). Defendants fail to even identify which privacy right is at stake. Accordingly, Defendants' request for the entry of another protective order that unduly limits Buccellati's right to discovery of relevant information should be denied.

### IV. CONCLUSION

For the foregoing reasons, Buccellati respectfully requests that this Court deny Defendants' Emergency Motion to Quash or Modify a Subpoena and for a Protective Order, and further lift the stay imposed on the enforcement of Buccellati's Third Party subpoena of BankUnited, Inc., so that Buccellati may proceed with discovery.

DATED:  January 2, 2014                                  Respectfully submitted,

**FRIEDLAND VINING, P.A.**

/s/Jaime Rich Vining
By:  David K. Friedland
Florida Bar No. 833479
Email:  dkf@friedlandvining.com
Jaime Rich Vining
Florida Bar No. 030932
Email:  jrv@friedlandvining.com
1500 San Remo Ave., Suite 200
Coral Gables, FL 33146
(305) 777-1720 – telephone
(305) 456-4922 – facsimile

-and-

**EDWARDS WILDMAN PALMER, LLP**

Perla M. Kuhn (admitted *pro hac vice*)
Rory J. Radding (admitted *pro hac vice*)
H. Straat Tenney (admitted *pro hac vice*)
750 Lexington Avenue
New York, NY 10022

Jami A. Gekas (admitted *pro hac vice*)
225 W. Wacker Drive
Chicago, IL 60606

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on the above referenced date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the Manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Albert Bordas, Esq.
**ALBERT BORDAS, P.A.**
Email: albert@bordasiplaw.com
5975 Sunset Dr., Suite 607
Miami, FL 33143
(305) 669-9848 – telephone
(305) 669-9851 – facsimile
*Service via ECF*

Leonardo G. Renaud, Esq.
**LEONARDO G. RENAUD, P.A.**
Email: leonardorenaud@aol.com
8105 NW 155th St.
Miami Lakes, FL 33016
(305) 818-9993 – telephone
(305) 818-9997 – facsimile
*Service via ECF*

David T. Azrin, Esq.
**GALLET DREYER & BERKEY LLP**
Email: dta@gdblaw.com
845 3rd Ave., 8th Fl.
New York, NY 10022
(212) 935-3131 – telephone
(212) 935-4514  – facsimile
*Service via ECF*

                                              s/Jaime Rich Vining
                                                Jaime Rich Vining