**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:13-cv-21297-KMM

BUCCELLATI HOLDING ITALIA SPA
and BUCCELLATI, INC.,

    Plaintiffs,

vs.

LAURA BUCCELLATI, LLC, LAURA
BUCCELLATI, and LILIAN AZEL,

    Defendants.
_____/

LAURA BUCCELLATI, LLC, and LAURA
BUCCELLATI

    Counter-Plaintiffs,

vs.

BUCCELLATI HOLDING ITALIA SPA,
BUCCELLATI, INC., GIANMARIA
BUCCELLATI, BUCCELLATI WATCHES
SA, and PAOLO CARRION

    Counter-Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO
DISMISS DEFENDANTS' COUNTERCLAIM OR, ALTERNATIVELY, FOR A MORE
DEFINITE STATEMENT**

    THIS CAUSE came before the Court upon Plaintiffs Buccellati Holding Italia SPA and

Buccellati, Inc.'s Motion to Dismiss Defendants' Counterclaim or, Alternatively, For a More

Definite Statement (ECF No. 29). Defendants filed a Response (ECF No. 32) and Plaintiffs filed

a Reply (ECF No. 34). This Motion is therefore ripe for review. For the reasons set forth below,

Plaintiffs' Motion is granted in part and denied in part.

I.     BACKGROUND

Buccellati is the owner of the right, title and interest in and to the following federally registered trademarks and service marks:

| Mark | Reg. No. | Reg. Date | First Use | Int'l Class(es) |
|---|---|---|---|---|
| BUCCELLATI | 841,635 | 1/2/1968 | 12/13/1952 | 8, 14 |
| BUCCELLATI | 865,932 | 3/14/1969 | 12/31/1958 | 35 |
| BUCCELLATI | 2,156,171 | 5/12/2008 | 12/31/1952 | 14 |

Compl., at ¶ 10.

In September 2007, Buccellati Holding Italia SPA filed an application, Serial No. 77281335 ("'335 application"), with the U.S. Patent and Trademark Office ("PTO") for the mark BUCCELLATI, based on intent to use. Countercl., at ¶¶ 28-35. The application identified the use of the mark in conjunction with a number of goods, including the following:

> International Class: 018 for Leather and imitations of leather, and goods made of these materials and not included in other classes, namely, trunks, hat boxes for travel, clutch bags, briefcases, wallets, pocket wallets, credit card cases, business card cases, key cases and change purses, bill holders, namely, pocket wallets; traveling trunks; traveling bags, namely, suitcases; traveling bags; traveling bags, namely, luggage; traveling bags, namely, garment bags for travel; briefcase-type portfolios; umbrellas; animal carriers rucksacks, haversacks, leather or textile shopping bags; beach bags; handbags; vanity cases used as traveling bags sold empty; tote bags and travel satchels; umbrellas and parasols;
>
> International Class: 035 for Retail store services and online retail store services featuring jewelry, watches, precious metals and goods made of precious metals, precious stones, cosmetics, perfumery, hair care preparations, cutlery, eyewear, paper goods, printed matter, writing instruments, leather goods and imitation of leather goods, furniture, household and kitchen utensils, textile fabrics and textile goods, clothing, footwear, headwear, and smoker's articles.

Countercl., at Ex. G.

In March 2008, Laura Buccellati filed an application, Serial No. 77430142 ("'142"), with the PTO to register the mark LAURA BUCCELLATI in stylized cursive font in connection with handbags and belts, based on an intent to use, which was later amended in December 2009 to allege actual use for the handbags since June 2008 and actual use for the belts since November 2009.  Countercl., at ¶¶ 25-27.  In January 2009, Laura Buccellati received notice from the PTO that her application was being suspended because of Buccellati's '335 application.  Countercl., at ¶ 28.

In January 2010, Laura Buccellati, LLC, commenced an Opposition proceeding in the PTO against the '335 application on the grounds of likelihood of confusion, lack of a bona fide intent to use the mark at the time the application was filed, lack of a bona fide use of the mark currently, and fraud.  Compl., at ¶ 31; Countercl., Ex. K.  In response, Buccellati filed a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  Countercl., Ex L, at 3-4.  Laura Buccellati, LLC, withdrew its fraud claim against Buccellati in its Response to the Motion.  Id. at 3.  Buccellati's Motion to Dismiss was granted in part and denied in part.  Id. at 7-8.  Specifically, the PTO dismissed Laura Buccellati's claim that the applicant had not made a bona fide use of the mark as it relates to class 18.  Id.  The PTO allowed Laura Buccellati's claims that: (1) the mark is primarily merely a surname, (2) the applicant lacked a bona fide intent to use the mark at the time the application was filed, and (3) that applicant has not made a bona fide use of the mark as it relates to Class 35, to proceed.  Id.  This proceeding is currently pending before the PTO.  Compl., at ¶ 31.

This instant suit was originally brought by Plaintiffs' Buccellati Holding Italia SPA and Buccellati, Inc., against Defendants Laura Buccellati, LLC, Laura Buccellati, and Lilian Azel, seeking injunctive relief and damages for alleged acts of trademark infringement, false

3

designation of origin, trademark dilution, and unfair competition because Defendants were engaged in designing and selling products such as handbags, carryalls, purses, wallets, belts, and scarves under the LAURA BUCELLATI name and trademark. See generally Compl. (ECF No. 1). Defendants Laura Buccellati, LLC and Laura Buccellati then filed a Counterclaim against Plaintiffs and three additional parties, Gianmaria Buccellati, Buccellati Watches SA, and Paolo Carrion ("European Counter-Defendants") seeking: (1) declaratory and injunctive relief to establish Defendants' rights to use the name LAURA BUCCELLATI in connection with leather handbags and leather belts, and (2) cancellation and determination as to concurrent use with respect to trademark registration no. 3694700 ("'700"),[1] the '335 application, and the '142 application.[2] See generally Contercl.

Plaintiffs Buccellati Holding Italia SPA and Buccellati Inc. subsequently filed a Motion to Dismiss Counter-Plaintiffs' Counterclaim on the basis that: (1) Counterclaim is a shotgun pleading, (2) Counter-Plaintiffs have failed to state proper claims for declaratory and injunctive relief in Count I of the Counterclaim, and (3) Counter-Plaintiffs have failed to state a proper claim for "cancellation and determination as to concurrent use" in Count II of the Counterclaim. Alternatively, Plaintiffs move for a more definite statement.[3] See generally Plaintiffs' Motion to Dismiss Defendants' Counterclaim or, Alternatively, for a More Definite Statement ("Counter-Defs.' Mot.") (ECF No. 29).[4]

---

[1] Note that registration no. '700 relates to Counter-Defendants Buccellati Watches SA and Paolo Carrion and thus will be dealt with by separate Order. See footnote 4 infra.

[2] Hereinafter, Defendants Laura Buccellati, LLC and Laura Buccellati will be referred to as "Counter-Plaintiffs."

[3] Hereinafter, Plaintiffs Buccellati Holding Italia SPA and Buccellati, Inc. will be referred to as "Counter-Defendants."

[4] The instant Motion to Dismiss was filed by Buccellati Holding Italia SPA and Buccellati, Inc. European Counter-Defendants Gianmaria Buccellati, Buccellati Watches SA, and Paolo Carrion subsequently filed their own Motion to Dismiss (ECF no. 49). The subsequent Motion and all

**II. LEGAL STANDARD**

1. <u>Motion to Dismiss</u>

A motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint. <u>Whitney Info. Network, Inc. v. Gagnon</u>, 353 F. Supp. 2d 1208, 1210 (M.D. Fla. 2005); <u>see also</u> <u>Fabricant v. Sears Roebuck</u>, 202 F.R.D. 306, 308 (S.D. Fla. 2001). A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. <u>Milburn v. United States</u>, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. <u>SEC v. ESM Group, Inc.</u>, 835 F.2d 270, 272 (11th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" <u>Id</u>. at 679.

A complaint must also contain enough facts to indicate the presence of the required elements. <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). "[C]onclusory allegations, unwarranted

---

portions of Counter-Plaintiffs' Counterclaim that deal specifically with European Counter-Defendants will be dealt with by separate order.

deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

    2. Motion for a More Definite Statement

Federal Rule of Civil Procedure 12(e) provides the mechanism by which a party moves the court to require a more definite statement. Rule 12(e) permits a party to move for a "more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed.R.Civ.P. 12(e); see Home Mgmt. Solutions, Inc. v. Prescient, Inc., 07-cv-20608, 2007 WL 2412834, at *2 (S.D. Fla. Aug. 21, 2007). "If a pleading 'fails to specify the allegations in a manner that provides sufficient notice' or does not contain enough information to allow a responsive pleading to be framed, the proper motion to be filed is a motion for a more definite statement." Holtzman v. B/E Aerospace, Inc., 07-cv-80551, 2008 WL 2225668, at *2 (S.D. Fla. May 29, 2008) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)).

**III.   ANALYSIS**

Counter-Defendants move this Court to dismiss Counter-Plaintiffs' Counterclaim because it is a "shotgun pleading," and because Count I and Count II fail to state a proper claim. Alternatively, Counter-Defendants move for a more definite statement. While the Court agrees with Counter-Defendants that the Counterclaim could be much more clearly organized, it does not find that it is so disorganized as to be a "shotgun pleading." Thus, the Court turns to the issue of whether Count I and Count II of the Counterclaim state a proper claim and whether Counter-Defendants are entitled to a more definite statement.

    1. Count I

Count I of the Counterclaim makes four different requests for declaratory relief. Countercl., at 21. The Declaratory Judgment Act provides federal courts with jurisdiction over declaratory judgment actions when there is a justiciable case or controversy. 28 U.S.C. § 2201(a); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-27 (2007). A controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 549 U.S. at 127. When such a controversy exists, a court "may declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a) (emphasis added); Green Edge Enterprises, LLC v. Rubber Mulch Etc., LLC, 620 F.3d 1287, 1300 (Fed. Cir. 2010). However, the court does not have to do so. MedImmune, 549 U.S. at 136 ("The Declaratory Judgment Act provides that a court may declare the rights and other legal relations of any interested party, not that it must do so.") (internal quotations and citations omitted). This is because courts maintain broad discretion over whether to exercise jurisdiction over claims arising under the Declaratory Judgment Act. See Knights Armanent Co. v. Optical Sys. Tech., 568 F. Supp. 2d 1369, 1374 (M.D. Fla. 2008); see also It's A 10 Inc. v. Beauty Elite Group, Inc., No. 13-cv-60154, 2013 WL 4543796, at *2 (S.D. Fla. Aug. 27, 2013).

Counter-Plaintiffs are asking the Court to declare: (A) that Laura Buccellati and Laura Buccellati LLC's use of the mark Laura Buccellati in connection with leather handbags and leather belts does not infringe upon any rights of the Counter-Defendants ("Declaration A"); (B) Counter-Plaintiffs have superior rights to the mark Laura Buccellati and Buccellati in connection with leather handbags and leather belts ("Declaration B"); (C) Counter-Plaintiffs are entitled to registration of the mark Laura Buccellati in connection with leather handbags and leather belts

("Declaration C"); and (D) Counter-Defendants are not entitled to registration of the name Buccellati in connection with leather handbags and leather belts ("Declaration D"). Countercl., at 21.

### A. Declaration A

Counter-Defendants argue in their Motion that Declaration A should be dismissed because it is redundant of the claims in the underlying patent infringement case. Counter-Defs.' Mot., at 7-8. The Court's broad discretion over whether to exercise jurisdiction over claims arising under the Declaratory Judgment Act extends to cases where the declaratory count is redundant because "a direct action involving the same parties and the same issues has already been filed." Knights, 568 F. Supp. 2d at 1374-75. "When deciding whether to dismiss a counterclaim on the basis that it is redundant, courts consider whether a declaratory judgment serves a useful purpose." Medmarc Cas. Ins. Co. v. Pineiro & Byrd, PLLC, 783 F. Supp. 2d 1214, 1217 (S.D. Fla. 2011). To determine whether a claim serves a useful purpose courts consider whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim. Id.; Beauty Elite, 2013 WL 4543796, at *2.

The Court finds that Declaration A serves a useful purpose because it seeks different relief than Counter-Plaintiffs' affirmative defenses and Counter-Defendants underlying Complaint. See Medmarc, 783 F. Supp. 2d at 1217 (finding that a counterclaim served a useful purpose because it sought different relief than the complaint and the affirmative defenses and because all of the issues raised in the counterclaim would not be resolved by the underlying complaint). A judgment in Counter-Plaintiffs favor in the underlying case would not provide Counter-Plaintiffs with complete relief since Counter-Plaintiffs are asking the Court to assess the

8

scope and validity of Counter-Defendants' federally registered trademarks and pending application and the parameters of what is considered permissible and non-infringing use. Counter-Plaintiffs' Response in Opposition to Counter-Defendants' Motion to Dismiss ("Counter-Pls.' Resp."), at 8-11.  As a result, the Court will allow Declaration A to proceed.

### B. Declaration B

Declaration B asks the Court to declare that Counter-Plaintiffs have "superior rights" to the mark Laura Buccellati and Buccellati in connection with leather handbags and leather belts. Countercl., at 21.  Counter-Defendants argue in their Motion that Declaration B should be dismissed because there is no actual controversy regarding Counter-Plaintiffs' "superior rights" to the "Laura Buccellati" and "Buccellati" marks in connection with leather handbags. Counter-Defs.' Mot., at 7-8.  As previously mentioned, an actual controversy exists when the facts alleged demonstrate that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  See MedImmune, 549 U.S. at 127.  The Court finds that there is a controversy regarding Counter-Plaintiffs right to use the Laura Buccellati and Buccellati mark with regard to leather products. Thus, the Court does not find that it would be appropriate to dismiss Declaration B on a motion to dismiss.

### C. Declaration C

Declaration C asks the Court to declare that Counter-Plaintiffs are entitled to registration of the mark Laura Buccellati in connection with leather handbags and leather belts.  Countercl., at 21.  Counter-Defendants argue in their Motion that Declaration C should be dismissed because it is not ripe and it seeks an improper advisory opinion on a hypothetical and contingent future outcome.  Counter-Defs.' Mot., 8-10.  Counter-Defendants base this argument on the fact that

the '142 application is currently suspended at the PTO and so it has not made it through the examination process or been approved for publication. Id. However, Counter-Defendants concede that the Court's findings will have res judicata effect on any future 2(d) opposition which Counter-Defendants may initiate against Counter-Defendants' pending '142 application. Counter-Defs.' Mot., at 9.

Counter-Plaintiffs respond that the Court has statutory authority under 15 U.S.C. § 1119 to make a determination as to the proper scope of a registered mark, and to make a determination as to the proper scope of an "as-yet" registered mark as long as there is a registered mark at issue in the case and a sufficient nexus between the application proceeding and the dispute involving the registered mark. Counter-Pls.' Resp., at 11. However, Counter-Plaintiffs concede in their Response that the Court does not have authority to direct the issuance of a registration until after publication. Id. at 9, n. 9; see Johnny Blastoff Inc. v. Los Angeles Rams Football Co., 48 U.S.P.Q. 2d 1385, 1993-94 (W.D. Wis. 1998), aff'd on other grounds, 188 F.3d 427 (7th Cir. 1999) (stating that while the Court is entitled to make legal determinations that would affect the registrability of a pending application, it cannot determine the ultimate registrability of the mark, which is left to the PTO). Thus, on the issue of whether '142 is "entitled to registration" the Court will make determinations regarding the registrability of the '142 application. However, it will not declare that Counter-Defendants have a right to registration or direct the PTO to issue a registration. With this in mind, the Court will allow Declaration C to proceed.

**D. Declaration D**

Finally, Declaration D asks the Court to declare that Counter-Defendants are not entitled to registration of the name Buccellati in connection with leather handbags and leather belts. Countercl., at 21. Essentially, Counter-Plaintiffs are asking the Court to declare that certain

10

portions of Buccellati's pending '335 application are not entitled to registration. On this point there is an issue as to whether this Court has the authority to cancel portions of a pending application before the PTO. The statutory authority for this action is 15 U.S.C. § 1119 which states, "In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." By its language the statute seems to imply that 15 U.S.C. § 1119 only applies to a "registered mark." Other courts have found this to be the case. See, e.g., GMA Accessories, Inc. v. Idea Nuova, Inc., 157 F. Supp. 2d 234, 241 (S.D.N.Y. 2000) ("[B]y its terms, § 37 contemplates an action involving a registered trademark. Idea Nuova cites no authority for the proposition that § 37 permits a district court to cancel a pending trademark application. Accordingly, Idea Nuova's § 37 claim to 'cancel' GMA's as yet unregistered trademark . . . is dismissed.") (internal citations omitted). However, in the instant case both Parties agree that the Court can make a determination regarding an as-yet unregistered mark under the Lanham Act as long as there is a registered mark at issue in the case and there is a "sufficient nexus between the application proceeding and the dispute involving the registered mark." Counter-Defs.' Mot., at 10-11; Counter-Pls.' Resp., at 11-15. Both parties cite Johnny Blastoff v. Los Angeles Rams Football Co., 48 U.S.P.Q. 2d 1385 (W.D. Wis. 1998), for support.

    Counter-Plaintiffs argue that there is a sufficient nexus between the '335 application and the underlying trademark infringement action, while Counter-Defendants argue that there is not a sufficient nexus. Defs.' Opp., at 13-15. However, neither Party makes an effort to clarify how the sufficient nexus standard is applied in the context of the cancellation of a pending trademark application. Since this issue is being presented on a motion to dismiss, the Court is required to

11

view the Complaint in the light most favorable to the plaintiff.  See Elliot v. Sherwood Manor Mobile Home Park, 947 F. Supp. 1574, 1576 (M.D. Fla. 1996) ("A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff."). Therefore the Court will allow Declaration D to go forward.

Accordingly, Counter-Defendants' Motion to dismiss Count I is denied.  The Court also finds that Counter-Defendants are not entitled to a more definite statement on this claim.  A motion for a more definite statement should only be granted if a pleading is so vague or ambiguous that a party cannot reasonably be expected to respond.  Elliot v. Sherwood Manor Mobile Home Park, 947 F. Supp. 1574, 1579 (M.D. Fla. 1996).  The Court finds that Count I adequately notifies Counter-Defendants of the basis of Counter-Plaintiffs' claim.  Therefore, Counter-Defendants' Motion for a More Definite Statement regarding Count I is denied.

2. Count II

Count II asks the Court: (1) to cancel the portions of Counter-Defendants '335 application for registration of the name "Buccellati" in connection with leather goods on the basis of fraud and (2) to lift the suspension of Counter-Plaintiffs' '142 application so that Counter-Plaintiffs' application can proceed to registration on the grounds of concurrent use.[5]

**A.  Cancellation of Counter-Defendants' '335 Application on the Basis of Fraud**

The Lanham Act allows for cancellation of registrations, by one who believes that he is or will be damaged by the registration.  15 U.S.C. §§ 1064, 1092; see also Compton v. Fifth Ave. Ass'n, Inc., 7 F. Supp. 2d 1328, 1332 (M.D. Fla. 1998).  To prosecute a petition for cancellation successfully, a petitioner must plead and prove two basic elements: (1) that it has standing to

---

[5] Note that Count II also asks the Court to cancel Counter-Defendant Buccellati Watches SA's registration no. '700.  However, the instant Motion to Dismiss did not deal specifically with this claim and thus the Court will not discuss it in this Order.

12

petition to cancel in that it is likely to be damaged by the registration; and (2) that there are valid grounds why the registration should not continue to be registered.  See, e.g., Coach House Restaurant v. Coach & Six Restaurants, 934 F.2d 1551, 1557 (11th Cir.1991).  One ground on which a party may petition to cancel a registered service mark is that the registration was obtained fraudulently.  Angel Flight of Ga., Inc. v. Angel Flight America, Inc., 522 F.3d 1200, 1209 (11th Cir. 2008); 15 U.S.C. § 1064(3).  Fraud occurs when an applicant knowingly makes false, material representations of fact in connection with an application for a registered mark.  Angel Flight, 522 F.3d at 1209.

Counter-Defendants do not argue the first issue of standing.[6]  Instead, Counter-Defendants argue that there is no ground to cancel the '335 application because Counter-Plaintiffs' fraud allegations do not meet the heightened pleading standard of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Rule 9(b) requires identification of the specific who, what, when, where and how of the material misrepresentation or omission committed before the PTO."  Exergen Corp. v. Wal-Mart Stores Inc., 91 U.S.P.Q.2d 1656, 1667 (Fed. Cir. 2009).  Although state of mind may be pled generally, the circumstances must be pled in detail.  See Johnson Outdoors Inc. v. Navico, Inc., 774 F. Supp. 2d 1191, 1197 (M.D. Al. 2011).

The Counterclaim states that Buccellati Holding Italia SPA and Gianmaria Buccellati specifically committed fraud upon the PTO with regard to the '335 application by: (1) falsely representing to the PTO that it had a bona fide intent to use the mark Buccellati in connection

---

[6] Note that Counter-Defendants do however reiterate their argument that there is "no sufficient nexus" between the present case and the '335 application as to allow this Court to cancel the pending application pursuant to 15 U.S.C. § 1119.

with leather goods and imitation of leather goods; (2) falsely representing to the PTO that it had actually used the mark Buccellati in connection with retail store services and online retail store services featuring leather goods and imitation leather goods; and (3) failing to inform the PTO that the mark Buccellati was the surname of the CEO in response to a question by the PTO of the significance of the mark. Countercl., at ¶ 72. Counter-Plaintiffs further allege that these fraudulent statements were material to the application. For support Counter-Plaintiffs cite: (1) an affidavit submitted to the PTO dated June 17, 2008, where Gianmaria Buccellati stated that his company had used the mark Buccellati in connection with leather goods since 1952; (2) a letter from Gianmaria Buccellati to Laura Buccellati dated October 13, 2010, declining her business proposal, stating that he does not intend to sell leather articles, and essentially warning her to stay clear of the Buccellati name in connection with her business venture; and (3) an affidavit from Mario Buccellati who was an employee of Buccellati from 1980 to 2007 and president of Buccellati's North American operations from 1985 to 2007, which states that from 1985 to 2007 Buccellati did not entertain, discuss, or have intent to expand the Buccellati brand into the United States by selling leather market goods. Countercl., at Exs. H1, M1, N.

  This Court finds that Counter-Plaintiffs have adequately pled their fraud claim. They have specified the "who, what, when, where and how of the material misrepresentation or omission committed before the PTO." Thus, the Counter-Defendants motion to dismiss this portion of the Counterclaim is denied.

  The Court also finds that Counter-Defendants are not entitled to a more definite statement on this claim. Count II adequately notifies Counter-Defendants of the basis of Counter-Plaintiffs' claim. Therefore, Counter-Defendants' Motion for a More Definite Statement on this portion of Count II is denied.

### B. Counter-Plaintiffs' 142 Application and Concurrent Use

Counter-Plaintiffs' last requested relief under Count II is for the Court to lift the suspension on Counter-Plaintiffs' '142 application before the PTO and allow it to proceed to registration on the basis of concurrent use. Countercl., ¶ 79. Counter-Plaintiffs claim that they are entitled to concurrent registration rights because they have engaged in lawful concurrent use of the Laura Buccellati mark and they propose to continue to use the mark only on noncompeting goods where there is no likelihood of confusion. Countercl., ¶ 78. Concurrent registration is governed by Lanham Act §2(d), 15 U.S.C. § 1052(d) which provides in relevant part:

> Provided, That if the Commissioner determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under conditions and limitations as to the mode or place of use of the marks or the goods on or in connection with which such marks are used, concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of their concurrent lawful use in commerce prior to (1) the earliest of the filing dates of the applications pending or of any registration issued under this Act; (2) July 5, 1947, in the case of registrations previously issued under the Act of March 3, 1881, or February 20, 1905, and continuing in full force and effect on that date; or (3) July 5, 1947, in the case of applications filed under the Act of February 20, 1905, and registered after July 5, 1947. Use prior to the filing date of any pending application or a registration shall not be required when the owner of such application or registration consents to the grant of a concurrent registration to the applicant. <u>Concurrent registrations may also be issued by the Commissioner when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce</u>. In issuing concurrent registrations, the Commissioner shall prescribe conditions and limitations as to the mode or place of use of the mark or the goods on or in connection with which such mark is registered to the respective persons. (Emphasis added).

Counter-Defendants argue in their Motion that Counter-Plaintiffs have failed to state a claim entitling them to relief. First, Counter-Defendants argue that there is no authority supporting Counter-Plaintiffs' request for the Court to lift the stay on their '142 application before the PTO. Second, Counter-Defendants argue that Counter-Plaintiffs have not properly articulated a claim for "concurrent registration." For support, Counter-Plaintiffs cite McCarthy

15

on Trademarks & Unfair Competition, which states: "A concurrent use proceeding is initiated by an applicant for Principal Register registration filing an application that is limited to territory. In addition to the regular elements required in any application, the applicant must state, to the extent of its knowledge, the extent of the concurrent use by others, any registrations or applications filed by such other persons, the goods on which such use is made, and the time periods of use. The applicant for a concurrent registration must also state the area, goods, and mode of use of the mark for which it seeks registration." J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition, § 20:88 (2013). Counter-Plaintiffs respond that the doctrine of "concurrent use" registration is not limited to territorial restrictions and that while the PTO "normally will not grant concurrent use registrations on its own based on anything other than territorial restrictions" the statute and case law allows the Court to issue concurrent use registrations subject to conditions and limitations. Counter-Pls.' Resp., at 19-20.

The Court finds that the Counter-Plaintiffs have not adequately stated a claim for concurrent use. This is because this section of the Counterclaim is lacking any facts that would support a determination of concurrent use. See Countercl., at ¶ 78. Thus, Counter-Defendants' Motion to Dismiss is granted with regard to this claim.

## IV.   CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Counter-Defendants' Motion to Dismiss Counter-Plaintiffs' Counterclaim or, Alternatively, for a More Definite Statement (ECF No. 29) is GRANTED IN PART AND DENIED IN PART as follows:

        a. Counter-Defendants' Motion to Dismiss Count I of the Counterclaim is DENIED.

    b. Counter-Defendants' Motion to Dismiss COUNT II is DENIED with regard to the cancellation of the '335 application on the basis of fraud and GRANTED with regard to Counter-Plaintiffs' request that the court to lift the suspension on Counter-Plaintiffs' '142 application on the basis of concurrent use. Counter-Plaintiffs have ten (10) days from the date of this Order to amend the portion of Count II that this Court dismissed, related to concurrent use, or the dismissal will operate with prejudice.

    c. Counter-Defendants' Motion for a More Definite Statement is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this  3rd  day of January 2014.

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record